No. 37,965

PRESTON D. MILLER, JR., *Appellee*, v. MASSMAN CONSTRUCTION COMPANY, *Appellant*.

(219 P. 2d 429)

Opinion filed June 10, 1950.

*N. E. Snyder,* of Kansas City, argued the cause, and was on the briefs for the appellant.

*James K. Cubbison,* of Kansas City, argued the cause, and *Thos. E. Hudson,* of Kansas City, Mo., and *Blake A. Williamson* and *Lee Vaughn,* both of Kansas City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This appeal arises from a proceeding under the workmen's compensation act, wherein the workman sought compensation for injuries sustained October 2, 1947, to his "right foot, leg, back, left side and other parts of the body." The compensation commissioner found that the claimant had a twenty percent disability of his right foot due to his accidental injury arising out of and in the

course of his employment; that he was temporarily totally disabled from work due to a disturbance of his nervous system described by the respondent's medical witnesses as a causalgia and by the claimant's medical witness as some form of traumatic hysteria but which the commissioner found was a causalgia and that it was induced by the accidental injury to the claimant's right foot; that his inability to use his foot or to work was functional; that he had a definite loss of circulation in the lower right extremity which caused pain and suffering and rendered him unable to use the extremity; that the loss of circulation was relieved by blocking certain nerve ganglia with anesthetic preparations and while so anesthetized the automatic supply of blood to the lower right extremity was normal and the disability subsided, and that the claimant was offered an operation to sever some certain nerve which caused the causalgia, but that the results of such an operation were uncertain as to whether it would bring permanent relief and that the claimant's refusal to submit to such an operation was not unreasonable.

In his findings the compensation commissioner stated:

"It appears to the Commissioner that while compensation may be payable for disability in parts of the body other than a member directly involved in an accident in a case where the traumatic injury results in direct and easily apparent infection of the blood circulatory system (*Chamberlain v. Bowersock Mills & Power Co.,* 150 Kan. 934) without 'pyramiding,' it is not payable for a not-so-apparent or well-understood disturbance of the nervous system in parts of the body not directly involved in the accidental injury, such as causalgia (*Riggan v. Coleman Co.,* 166 Kan. 234); or a sympathetic nervous disturbance affecting an eye (*Schweiger v. Sheridan Coal Co.,* 132 Kan. 798), although full advantage of the healing period statute may be taken in such cases."

The compensation commissioner found that the claimant was entitled to compensation for forty-six weeks of temporary total disability for injuries other than to the foot, followed by twenty percent permanent partial loss of use of his right foot or an additional period of twenty-five weeks, plus a healing period of two and one-half weeks. The amounts allowed are not presently important.

The claimant appealed to the district court. In deciding the issue the district court said it was convinced the evidence showed bodily injury outside and beyond a specific injury that counsel for the respondent seemed to consider as the only injury in the case. In its journal entry of judgment the court found that all of the claimant's injuries and disabilities arose out of and in the course of his employment, resulting from his fall from a scaffold, and

"That the injuries received were not confined to the right foot alone, but

extended to and included several portions of claimant's body; that is, the court is convinced claimant suffered more injury than merely to claimant's right foot, and all the physical conditions complained of by claimant and all the positive physical findings made by the respective medical witnesses, were caused by and resulted from the fall described, which rendered claimant totally disabled, whether termed causalgia or otherwise, and claimant will continue to be so disabled in the future for an indefinite period of time."

The trial court further found and adopted all of the findings of the compensation commissioner not inconsistent with the trial court's findings and made an award based on total disability, in favor of the claimant from October 9, 1947, one week after the accidental injury, for an indefinite period of time not to exceed 415 weeks, subject to review and modification as provided by statute. Amounts previously paid and to be paid need not be detailed.

From the award so made the respondent has appealed to this court, where it specifies as error (1) that the trial court erred in ignoring the question of causalgia and in making an award of temporary and total disability which the record shows was the result of causalgia and hence was not compensable, the only compensable disability being for the injury to the claimant's right foot and the temporary total disability awarded by the compensation commissioner; (2) that there was no substantial evidence to support the judgment of the trial court; and (3) that the trial court erred in holding that the claimant's refusal of a surgical operation was reasonable.

At the oral argument herein respondent made it clear that it was not resisting payment of compensation—its argument in effect was that the award made by the compensation commissioner was proper and that made by the trial court was erroneous. In its brief, respondent recognizes the rule that disability of a workman is a question of fact on which the finding of the trial court will not be disturbed in this court if supported by competent evidence (see e. g. *Alexander v. Chrysler Motor Parts Corp.*, 167 Kan. 711, 207 P. 2d 1179, and cases cited), and after stating the basic question for determination is not the nature and extent of the disability of the claimant but the cause of it, contends that the general disability at the time of trial was attributable to causalgia resulting from specific injury to the right foot, that such general disability is not compensible, there being a complete absence of any objective evidence of disability other than the injury to the right foot. In support of its contention respondent directs our attention to *Gallivan v. Swift & Co.*, 136 Kan. 234, 236, 14 P. 2d 665, where it was said:

"It [the workmen's compensation act] also provides that if a workman is entitled to compensation for a specific injury under the schedule, such compensation shall be exclusive of all others, with certain exceptions not material here [and citing Laws 1927, ch. 232, G. S. 1935, 44-510];"

and to *Cornell v. Cities Service Gas Co.*, 138 Kan. 607, 609, 27 P. 2d 228, where it was said that:

"Fundamentally, almost any scheduled injury . . . produces some—perhaps slight, although it may be substantial—unnatural result upon normal bodily functions."

and to *Rogers v. Board of Public Utilities*, 158 Kan. 693, 696, 149 P. 2d 632, where it was said:

". . . if a workman *is entitled to compensation* for any injury suffered and scheduled under subdivision 3 (c), [of G. S. 1943 Supp. 44-510] then the compensation . . . is exclusive of all other compensation provided for under any and all other provisions of the act."

We need not review the facts of the above cases for we are of the opinion that as contrasted with the evidence in the case before us, to which reference is later made, they are clearly distinguishable, and that the quotations made above are not decisive.

Respondent also cites and relies upon *Riggan v. Coleman Co.*, 166 Kan. 234, 200 P. 2d 271, where it was held:

"When in a proceeding such as is described in syllabus 1 the uncontroverted testimony is to the effect the scheduled injury sustained by the claimant is followed by additional incapacity which is caused by a causalgia condition directly related to and arising from the injury to his right arm the provisions of G. S. 1947 Supp. 44-510 (3) (c) (21) preclude additional compensation for either temporary or permanent disability and limit any recovery of additional compensation to the actual healing period therein described which in no event can be for longer than fifteen (15) weeks." (Syl. ¶ 2.)

Although reference is made to that opinion for a more complete statement of the facts we note that it was there said the only evidence was "that the extreme pain in appellee's shoulder, neck and head, resulting in his severe headaches and additional incapacity, was referred there from the injured member of his body and caused by a condition known as causalgia which is a very common accompaniment of severe injury where there is either nerve or blood vessel injury to an extremity." (l. c. 236.)

Respondent's contention and argument appear to be predicated on its previous statement that the facts are well summarized in the award of the commissioner, and our attention is directed to his findings with respect to the causalgic state which he concluded existed. We shall not pause to examine whether if so limited, the contention

is sound, for it was the duty of the trial court on appeal to make an independent examination of the evidence, and to make such an award as justice may require, and it is this same evidence which we examine to determine the legal question whether the trial court's conclusions of fact have a competent and substantial legal basis.

It may be conceded without detailing it that there was ample evidence as to the injury to the claimant's foot and that the respondent offered medical testimony that the claimant's disability, aside from the injury to his foot, was the result of causalgia. That, however, is not all of the evidence as disclosed by the record as abstracted. The claimant testified that he fell about twenty feet from a scaffold, injuring his right foot, his right wrist, his left side above the groin and his back; that he was taken to Doctor Johnson's office, who, then and thereafter, treated his foot and gave him medicine for his side. After about three months he was taken to Doctor Weaver, who examined him and said for him to return to work, which he did. He worked about three weeks, during which time his foot troubled him and he had difficulty with his back and side. Later he went to Doctor White, complaining of his foot, side and back. Doctor White took him to Doctor Gist and the two recommended a nerve block, of which he had three. When he left the hospital he was still having trouble with his side, back and foot. Doctor White gave him medicine for his side. Doctor White and Doctor Gist recommended cutting the nerve. Doctor Gist suggested the treatment but was not certain it would do any good. The nerve blocks gave only short relief. After talking to Doctor Gist he continued to have pains in his foot, side and back which kept him from sleeping. He could eat a little but could not digest. On a doctor's advice he moved to the country. On cross examination he testified that both Doctor Johnsons, who doctored him for his employer, advised against the operation suggested by Doctor Gist.

Doctor Feehan, specializing in orthopedics, examined the claimant on October 1, 1948, at which time the claimant walked with a limp, could hardly lie flat on the examining table because of pain in the lower left quadrant and complained of pressure in that quadrant. It was his opinion at that time that the claimant was totally disabled, and that the disability found was functional and caused by the accident and will continue. The witness further stated he meant to include in the scope of the term "functional disturbance" the subjective complaints he had, without definite organic pathology existing, following which the compensation commissioner asked,

"In other words, traumatic neurosis?" to which the doctor replied, "No, I think this may be even on the basis of hysteria, traumatic hysteria."

Doctor Weaver testified at length about treatments given by him in 1947 and 1948; that the claimant had abdominal disturbances and on examination he found a little mass there.

The claimant contends that the evidence discloses that he received multiple injuries and not an injury to his foot alone, and that the judgment of the trial court was correct, and in support he directs attention to *Morris v. Garden City Co.*, 144 Kan. 790, 62 P. 2d 920, where, as result of an accident the workman received injuries to his foot which were severe, and to his head which were not so serious, but the total effect of which left him suffering from traumatic neurosis. The employer there, as here, contended that the workman could have compensation only for the scheduled injury. In the course of the opinion it was said:

"It is true, as argued by appellant, that compensation for scheduled injuries is provided in our statute to prevent claims for total permanent disability by a workman who is injured only in some part of his body for which the schedule provides the sole compensation. This court has adhered to the purposes of the statute in this respect. (*Neuhaus v. Hope Engineering Co.*, 132 Kan. 72, 294 Pac. 655; *Schweiger v. Sheridan Coal Co.*, 132 Kan. 798, 297 Pac. 688; *Gallivan v. Swift & Co.*, 136 Kan. 234, 14 P. 2d 665; *Cornell v. Cities Service Gas Co.*, 138 Kan. 607, 27 P. 2d 228.) But, from the fact that a workman sustained an injury for which a scheduled compensation is payable, it does not follow that in the same accident he may not have sustained other injuries which, alone or combined with the scheduled injury, totally incapacitate him. (*Fernandez v. Edgar Zinc Co.*, 138 Kan. 735, 27 P. 2d 239.) Here the injury from the same accident was to the foot and to the head. The injury to the foot was severe. The head concussion was spoken of as being slight, but the combined effect was to shatter his nerves to the extent that it affected his mentality. He is a neurotic, totally incapacitated for work. Under the evidence and the findings of the trial court there is no room to say compensation should be limited to that for a scheduled foot injury." (l. c. 792.)

The respondent seeks to avoid the force and effect of the above case by calling attention to the fact that in that case medical witnesses characterized the claimant's condition as traumatic neurosis, and that there is no such testimony in the case at bar. It is true that the claimant's physician stated as set out above, that the condition was "traumatic hysteria" not "traumatic neurosis," but that difference in terms is not of itself decisive. It is not disputed that each witness of whom inquiry was made testified that at the

time of the hearing the claimant was not able to return to his employment. That the evidence showed the claimant suffered injuries to parts of his body other than his foot, that he was treated for such other injuries, and that he testified he still suffered from them is hardly open to dispute.

By analogy, the judgment of the trial court is supported by the case just cited. Any inference in the argument that the testimony of medical witnesses is controlling as to the duration of the workman's incapacity is not warranted in view of our decision in *Cowan v. Kerford Quarry Co.*, 146 Kan. 682, 684, 72 P. 2d 999.

The respondent also contends that the claimant's refusal of a surgical operation was unreasonable. In view of the fact the evidence disclosed that two doctors advised the claimant not to submit to the proposed surgical removal of a nerve, and that no doctor testified that such an operation would be effective to complete a cure; and in further view of the fact that both the compensation commissioner and the trial court found that the claimant's refusal was not unreasonable, there is nothing for discussion.

The judgment of the trial court is affirmed.