(621 P.2d 1019)
No. 51,869

HENRY WILLIS SHANK, *Appellee,* v. MID-AMERICA DRILLING COMPANY and UNITED STATES FIDELITY AND GUARANTY COMPANY, *Appellants.*

Opinion filed January 9, 1981.

*James H. Morain,* of Vance, Hobble, Neubauer, Nordling, Sharp & McQueen, P.A., of Liberal, for appellants.

*James A. Kuharic,* of Hugoton, for appellee.

Before REES, P.J., ABBOTT and PARKS, JJ.

REES, J.: The employer and its insurance carrier appeal from the district court award of workers' compensation to the claimant for an on-the-job injury sustained July 24, 1977.

The evidence need not be restated beyond the mention made in our discussion of the appellants' arguments.

Dr. Zacharias opined the percentage of loss of use of claimant's left forearm lies in the range of 90% to 100%. Appellants argue that opinion, standing alone, is sufficient to support a partial loss of use award in any percentage less than 100%, for example, 99%, but not as much as the 100% for which award was made.

The testimony of the claimant and Dr. Zacharias includes narrative descriptions of the loss of use. Dr. Zacharias graphically testified, "I think what he has actually is worse than an appliance. In other words, if the arm were cut off and he had to wear an artificial hook, he could probably do more with that than what he can do with his own hand."

We are referred to no statutory or case law requirement that the percentage of loss of use for which compensation is awarded must be identical to or not exceed the limits of numerical description presented in medical expert testimony. The whole of the

evidence on loss of use, the doctor's 90% to 100% opinion together with the narrative descriptions, is sufficient to support the trial judge's factual determination and his 100% permanent partial loss of use award. See *Paul v. Skelly Oil Co.,* 134 Kan. 636, 640-641, 7 P.2d 73 (1932).

In *Rose v. Thornton & Florence Electric Co.,* 4 Kan. App. 2d 669, 609 P.2d 1180, *rev. denied* 228 Kan. 807 (1980), we held disability is no longer temporary when the maximum point of recovery is reached or the worker's condition becomes medically stationary or stable. Whether a disability is temporary or permanent in nature is a question of fact. 4 Kan. App. 2d at 672-673. The evidence reflects that although the claimant's temporary total disability "had pretty well ended" as of April 7, 1978, Dr. Zacharias believed there had been further improvement up to August 9, 1978, when, in the doctor's opinion, the claimant had probably reached maximum recovery. We find no reversible error in the trial judge's determination that the period of temporary total disability extended to the latter date.

It was provided in K.S.A. 1977 Supp. 44-510d(*b*) that "the director may, in proper [scheduled injury] cases, allow additional compensation during the actual healing period." K.A.R. 1975 Supp. 51-7-12, as in effect on the date of this claimant's injury-causing accident, provided that "[a]dditional compensation for a healing period in case of amputation may be allowed by the director." The present version of the director's rule, K.A.R. 51-7-12, differs from the "old" rule only in that there has been *added* the provision that "[a]dditional compensation for healing period in cases of scheduled injury, not an amputation, may be allowed by the director in proper cases." The authority for a healing period award is permissive in nature. *Bergemann v. North Central Foundry, Inc.,* 215 Kan. 685, 692, 527 P.2d 1044 (1974). Taking the statute and the "old" rule at face value, we cannot find entitlement to healing period compensation restricted to amputation cases only; clearly the present rule does not do so. The only limitation or restriction we see in reading the statute and the rules is that the director find a given case to be a "proper case."

Insofar as is here applicable, K.S.A. 1977 Supp. 44-510c(*c*) provided that where temporary total disability is followed by partial disability, the compensation to be paid is as provided in K.S.A. 1977 Supp. 44-510d. By the latter statute and for 100%

permanent partial loss of use of the forearm, the claimant is entitled to compensation payments for 200 weeks. K.S.A. 1977 Supp. 44-510d(a)(12); K.S.A. 1977 Supp. 44-510d(a)(21). The award by the trial judge of compensation for temporary total disability followed by permanent partial loss of use of the forearm is not challenged. The question at issue is whether the award by the trial judge of healing period compensation, an additional fifteen weeks compensation, is prohibited as a matter of law when there was no amputation. Appellants rely upon *Hering v. San Ore Construction Co.,* 130 Kan. 70, 285 Pac. 592 (1930), for the proposition that claimant is not entitled to healing period compensation absent amputation.

A counter argument of claimant is that the removal of the proximal row of carpal bones, including the lunate bone, during treatment constituted amputation. We choose to not decide whether that be true but our visceral reaction is that the argument is weak at best.

In *Hering,* the claimant sustained compound fractures between the knee and ankle. There was imperfect healing. The commissioner entered an award for temporary total disability plus an award for a following 33-⅓% permanent partial loss of use. The district court modified; the award for permanent partial loss of use was stricken; awards were made for temporary total disability and fifteen weeks healing period. The principal issues dealt with on appeal to the Supreme Court were whether the claimant was entitled to awards for both temporary total disability and permanent partial loss of use and, if so, how the awards were to be computed. It was held the claimant was entitled to both awards, that the period during which the claimant was totally disabled was to be subtracted from the number of weeks for which loss of use was payable according to the statutory schedule, and that compensation for the permanent partial loss of use was to be computed by applying the percentage of loss of use, 33-⅓%, to the number of weeks represented by subtraction of the number of weeks of temporary total disability from the number of weeks statutorily prescribed for loss of use. As a part of its decision, the Supreme Court stated "[t]he extra compensation for . . . healing period is allowed in cases of amputation only" (130 Kan. at 74), and the judgment by the Supreme Court omitted award for healing period (130 Kan. at 75, 76).

Appellants refer us to no Kansas case authority subsequent to *Hering* where healing period compensation is held to require amputation. Our Shepardizing of *Hering* has developed no such authority. *Rhea v. Kansas City Power & Light Co.*, 176 Kan. 674, 272 P.2d 741 (1954), involved temporary total disability followed by permanent partial loss of use. The opinion includes quotation of the award of the commissioner which recites denial of healing period compensation with reliance upon *Hering*. 176 Kan. at 675-676. In *Rhea*, the Supreme Court did not pass upon the propounded rule that amputation is necessary for the award of healing period compensation.

The claimant points to decisions of our Supreme Court subsequent to *Hering* in which healing period compensation has in one instance been approved (*Schweiger v. Sheridan Coal Co.*, 132 Kan. 798, 800-801, 802, 297 Pac. 688 [1931]) and in another instance directed (*Riggan v. Coleman Co.*, 166 Kan. 234, 237, 238, 200 P.2d 271 [1948]) under sufficiently analogous factual circumstances. (We note that in *Paul v. Skelly Oil Co.*, 134 Kan. at 640, one aspect of the *Hering* computation of permanent partial loss of use compensation was found erroneous with the Supreme Court saying the particular issue had not been squarely presented for its determination in *Hering*.)

Perhaps the vitality of the rule that entitlement to healing period compensation requires amputation is uncertain with regard to workers' compensation cases arising prior to the effective date of the present version of K.A.R. 51-7-12, May 1, 1978. However, in view of *Schweiger* and *Riggan*, which we have noted were both decided after *Hering*, and our approval of the award in this case for 100% permanent partial loss of use of the forearm, a condition which is difficult to distinguish from "loss of" or complete or total loss of use, we hold the trial judge's award was not erroneous.

Affirmed.